**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CALEB BALDWIN, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN MULTI-CINEMA, INC., a Missouri corporation, )<br><br>Defendant. ) | Case No. 17-cv-848<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Caleb Baldwin ("Plaintiff") brings this Class Action Complaint against Defendant American Multi-Cinema, Inc. ("AMC"), on behalf of himself and all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.     NATURE OF THE ACTION

1.      Defendant AMC is a company that operates hundreds of theaters across the United States. AMC sCaCaells tickets to attend movies at its theaters, as well as food and drink. In an effort to market its products and services, AMC sent (or directed to be sent on its behalf) text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.      Neither Plaintiff nor the other Class members ever provided AMC with prior express written consent to send text messages to their wireless telephones.

627060.1

3.      By sending such unauthorized text messages, AMC caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance, the loss of battery life and their phones' data storage, and the monies paid to their wireless carriers for the receipt of such messages.

4.      In order to redress these injuries, Plaintiff seeks: (a) an injunction requiring AMC to cease sending text messages without prior express written consent; and (b) an award of statutory damages to the Class members under the TCPA, together with costs and reasonable attorneys' fees.

## II.      JURISDICTION AND VENUE

*Subject Matter Jurisdiction*

5.      This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

*Personal Jurisdiction*

6.      This Court has personal jurisdiction over AMC under the Illinois Long-Arm Statute, 735 ILCS 5/2-209, because AMC was engaged in solicitation or service activities within the State of Illinois. This Court also has personal jurisdiction over AMC because a substantial a portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward this State. AMC, by sending text messages to wireless telephones soliciting business in the State of Illinois, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

*Venue*

7.      Venue is proper in this District, pursuant to § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

627060.1

### III.    PARTIES

*Plaintiff*

8.      Plaintiff is an individual domiciled in Cook County, Illinois.

9.      Plaintiff is the regular user of his wireless telephone number ending in 0751.

*Defendant*

10.     AMC is a corporation organized in and existing under the laws of the State of Missouri with its principal place of business located at 11500 Ash Street, Leawood, Kansas 66211.

11.     AMC maintains a registered agent, Corporate Creations Network, Inc., located at: 350 South Northwest Highway, Suite 300, Park Ridge, Illinois 60068.

### IV.    FACTUAL BACKGROUND

*Background on Unsolicited Text Message Activity*

12.     According to a study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[1] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[2]

13.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 30, 2017).

[2] *Id.*

627060.1

***AMC Must Obtain Prior Express Written***
***Consent Prior To Sending Telemarketing Text Messages***

14.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

15.     Originally, companies trying to sell to their products or services only needed "prior express consent."

16.     As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express *written* consent, defined at 47 C.F.R. 64.1200(f)(8). *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (the "2012 Order") (amending 47 C.F.R. 64.1200(a)(2)).

17.     "Prior express written consent" is defined as:

> an agreement, in writing, bearing the signature of the person called that **clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system** or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

> (i)     The written agreement **shall include a clear and conspicuous disclosure** informing the person signing that:

>> (A)     By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory **telemarketing calls using an automatic telephone dialing system** or an artificial or prerecorded voice; and

>> (B)     The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. 64.1200(f)(8) (emphasis added).[3]

---

[3] For purposes of the TCPA, "text messages" are "calls". *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 165 (2003) (the "2003 FCC Order").

18.     As the FCC recognized, requiring prior express ***written*** consent was consistent with Congress' finding that, in order to protect consumers' privacy interests, rigors should be imposed on companies who want to conduct telemarketing activities:

> At the outset, we note that the benefits to consumers of increased protection from unwanted telemarketing robocalls are significant. By enacting the TCPA and its prohibitions on unwanted calls, Congress has already made an assessment that the benefits of protecting consumer privacy are substantial.

2012 Order at ¶ 19.

19.     In addition, the FCC recognized that Congress intended consistency with telemarketing laws and that by requiring "prior express written consent," the TCPA would be harmonized with the Telemarketing Sales Rule of the Federal Trade Commission ("FTC"), as contemplated by the Do-Not-Call Implementation Act ("DNCIA"), 15 U.S.C. § 6101:

> Congress, through enactment of a second law—the DNCIA—has further determined that there are substantial benefits to consistency in telemarketing regulations by the Commission and the FTC.

*Id.*

20.     Importantly, the FCC also found that while the TCPA originally required some safeguard against telemarketing activities, namely "prior express consent," "consumers continue to experience frustration in receiving unwanted telemarketing robocalls" and thus "prior express written consent" was needed to further protect consumers' privacy interests. *Id.* at ¶ 22.

21.     Thus, Congress and the FCC determined that the onus is on sellers to obtain the requisite consent prior to sending any telemarketing or advertising text messages.

22.     "Prior express written consent" is distinct from "prior express consent" under the TCPA. Unlike "prior express consent," "prior express ***written*** consent" requires a written agreement signed by the person receiving the calls or text messages, with a "clear and

conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system.

***Complaints Regarding AMC's Text Message Campaign***

23.    In order to increase the size of its marketing database and sales at its theaters, AMC launched an aggressive text message marketing campaign in or around 2011.

24.    AMC wanted to collect as many phone numbers of potential customers as it could in order to promote purchases at its theaters

25.    AMC intended to do this even though it would not obtain the requisite consent to blast people's cell phones with marketing materials.

26.    On November 14, 2011, AMC licensed the short code 242424 for its campaign.

27.    On November 27, 2012, AMC licensed the short code 272727 for its campaign.

28.    According to U.S. Short Code Directory, "By using text messaging and their vanity short code 242424, AMC Theatres is able to not only drive new customers, but also able to increase loyalty from existing customers. Both result in increased business for AMC Theatres."[4]

29.    AMC uses short codes and other phone numbers to send text messages through the use of equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

30.    AMC promoted its text message marketing campaign in its theaters and elsewhere.

---

[4]    AMC Theaters SMS Short Code, 272727 Short Code, https://usshortcodedirectory.com/directory/short-code-272727/# (last accessed January 30, 2017).

-6-

31.     Unbeknownst to people, including Plaintiff, AMC intended to send telemarketing messages through the use of an automatic telephone dialing system without first obtaining their lawful consent.

32.     Further, in some cases, AMC led customers to believe that its text message campaign was meant to distribute coupons and discounts—not sell tickets to movies at full price.

33.     Since AMC launched its telemarketing campaign, numerous wireless phone users have complained about receiving text messages:

- "Same here—I got two texts after 12am pac time about AMC movie offers. I hope they don't' keep doing that! I don't have unlimited texts!" (Mr. F, Jan. 9, 2011)[5]

- "Same as TB: 2 text messages about AMC movies at 9:00pm pacific time." (J, Jan. 9, 2011)

34.     Indeed, AMC was sued for violating the TCPA by sending text messages without the proper consent as late as 2015. *Addison v. AMC Entertainment, Inc. et al.*, No. 15-cv-2420 (D. Minn.) (voluntarily dismissed May 22, 2015).

**Defendant's Text Message Advertisement To Plaintiff**

35.     At some point in 2016, Plaintiff learned of AMC's text message campaign.

36.     Subsequently, as illustrated below, 2016, Plaintiff texted "AMC" to 272727.

---

[5] http://800notes.com/Phone.aspx/1-260-435-0223 (last accessed Jan. 30, 2017)

627060.1



37.     AMC offered to send text messages to Plaintiff if Plaintiff replied "Y".

38.     Plaintiff replied, "Y." However, as further alleged below, AMC did not obtain lawful consent, here "prior express written consent," to send any telemarketing messages to Plaintiff.

39.     Weeks passed without Plaintiff receiving any text messages from AMC.

40.     Plaintiff forgot that AMC solicited him to enroll in its text message program.

41.     After having forgotten about texting "AMC" to 272727, Plaintiff received the following text message promoting the new Star Wars© movie:

627060.1



42.     AMC's text message was designed to solicit people, like Plaintiff, to buy a ticket at full price.

43.     Plaintiff did not recognize the number 272727 when he received AMC's unconsented-to text message.

44.     Plaintiff is annoyed when he receives text messages and calls from phone numbers that he does not recognize.

45.     Plaintiff was particularly annoyed when he received AMC's unconsented-to text message, because, at that time, he was preparing for a final project for school.

46.     Plaintiff had to stop his work and review who sent AMC's unconsented-to text message.

47.     In addition, Plaintiff's wireless telephone lost battery life by receipt of AMC's unconsented-to text message.

48.     Plaintiff's wireless telephone's data storage was consumed by receipt and storage of AMC's unconsented-to text message.

-9-

627060.1

49.    Subsequently, Plaintiff replied "STOP" to make sure AMC did not continue to annoy him with any messages or further use up any of his wireless phone's components.

50.    Nevertheless, Plaintiff fears that AMC will maintain his phone and the phone numbers of other Class members' in order to send them additional marketing text messages without his lawful consent.

***Defendant Failed To Obtain Prior Express Written Consent
From Plaintiff Before Sending Its Text Message Advertisements***

51.    AMC ***never*** obtained the requisite consent to send text message advertisements to Plaintiff's wireless telephone.

52.    AMC's text message promoting the new Star Wars© movie constitutes an advertisement and telemarketing under the TCPA.

53.    Accordingly, AMC must have obtained prior express ***written*** consent from Plaintiff prior to sending him its text message.

54.    AMC failed to obtain prior express written consent because it did not obtain "an agreement, in writing" that must "include[d] a clear and conspicuous disclosure" informing Plaintiff that by replying "Y" to AMC's first text message, Plaintiff authorizes AMC to send him "telemarketing [text messages] using an automatic telephone dialing system." 47 C.F.R. 64.1200(f)(8).

***Defendant Used An Automatic Telephone Dialing System***

55.    AMC's text message promoting the new Star Wars© movie was impersonal in nature and not specifically addressed to Plaintiff.

56.    Indeed, the text message was addressed to ***all*** "AMC Star Wars fans."

57.    AMC sent the message using a short code. Such codes used by companies to send text messages *en masse*.

-10-

58.     AMC sent or transmitted, or had sent or transmitted on its behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

59.     AMC sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

## V.     CLASS ALLEGATIONS

60.     Plaintiff brings this action, as set forth below, on behalf of himself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States to whose wireless telephones Defendant sent a non-emergency, text message through the use of an automatic dialing system, at any time within the four years prior to the filing of this action (the "Class").

Excluded from the Class are AMC and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

61.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

62.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by AMC's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from AMC's books and records. Class

-11-

members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

63.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  whether AMC's text message constitutes telemarketing or advertising under the TCPA and corresponding regulations;

b.  whether the equipment AMC used to send the text messages in question was an automatic telephone dialing system under the TCPA and corresponding regulations;

c.  whether AMC's conduct constitutes a violation of the TCPA;

d.  whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

e.  whether Plaintiff and the Class are entitled to treble damages based on the willfulness of AMC's conduct; and

f.  whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

64.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

65.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

-12-

627060.1

66.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** AMC has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

67.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against AMC, so it would be impracticable for Class members to individually seek redress for AMC's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### VI.    CLAIM ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of the Class)

68.     Plaintiff incorporates by reference paragraphs 1-67 as if fully set forth herein.

69.     Defendant AMC and/or its agents sent text messages constituting an advertisement or telemarketing to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent, as defined by 47 C.F.R. § 64.1200(f)(8).

-13-

70.     AMC sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

71.     AMC utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

72.     By sending the text messages to Plaintiff and the Class, AMC violated 47 U.S.C. § 227(b)(1)(A)(iii).

73.     As a result of AMC's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the text messages on their wireless phones, loss of battery life and data storage used to receive and store such text messages, and an invasion of their privacy interest to be free from telemarketing conducted without the requisite consent. Under section 227(b)(3)(B) are Plaintiff and the Class members entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

74.     Should the Court determine that AMC's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII.     **JURY DEMAND**

75.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.     **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Caleb Johnson, individually and on behalf of the Class, requests that the Court enter an Order:

A.     Certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

-14-

627060.1

B.     Awarding statutory damages to Plaintiff and the Class members;

C.     Requiring AMC to cease sending text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.     Awarding reasonable attorneys' fees and costs; and

E.     Awarding such other and further relief that the Court deems reasonable and just.

Dated: February 1, 2017

LITE DEPALMA GREENBERG, LLC

By:  /s/ Katrina Carroll

Katrina Carroll
*kcarroll@litedepalma.com*
Kyle A. Shamberg
*kshamberg@litedepalma.com*
Ismael T. Salam
*isalam@litedepalma.com*
211 W. Wacker Drive
Suite 500
Chicago, IL 60606
Phone: 312.750.1265

***Counsel for Plaintiff
and the Proposed Putative Class***

-15-

627060.1